May it please the Court, my name is Alexandra Rim and I represent the appellant Mark Chisick. Your Honor, the proceeding before us today pertains to the District Court's disallowance of Mark Chisick's claim asserted against the bankruptcy estate, albeit Mark Chisick was an insider of the debtor from which the claim arises. Your Honor, excuse me? We can't hear you. You know, the microphone has nothing to do with it. You're going to have to talk up. The microphone is just to record for the tape. Certainly. I'd like to point out one important point with respect to this appeal. Prior to the claim objection proceeding, there was a release that the District Court had approved, and that approval was of a settlement stipulation. That settlement stipulation provided that all claims and causes of action that were alleged in a complaint that was filed by a liquidating trustee, and this complaint was filed in March of 2002, if any of those claims were already alleged in that complaint, or could have been alleged in that complaint, then those were the sorts of claims that were released. Well, the District Court found that this didn't work because it was not a claim that could have been alleged with respect to conduct in the original complaints against the debtors. Is that wrong? Your Honor, I would strongly disagree with that because the complaint itself actually had allegations relating specifically to this stock purchase transaction. The complaint had a cause of action for breach of fiduciary duty relating to the approval by FACO, and by FACO I mean the debtor, by members of the debtor, of the purchase of posts. I understand that, but first of all, Chizik was not one of the settling parties. Is that right? Well, Chizik was one of the settling parties. He was one of the settling parties? Well, certainly, to clarify, certainly the release extended to Chizik because he was a family member of several of the other settling parties. Was that claim listed among the claims in the complaint? Not that particular claim, but there was, in addition to the breach of fiduciary cause of action that was alleged specifically relating to the stock purchase transaction, there was a cause of action for disallowance of claims against Mark Chizik. But really, the problem is that Mark Chizik's claim was filed two years in advance of the complaint. The proof of claim by Mark Chizik was originally filed in May 2000, and the complaint was filed in March of 2002. Certainly, the plaintiff had knowledge of the factual basis of Mark Chizik's claim and any sort of claim objection that the plaintiff was going to pursue subsequently. So certainly, the plaintiff had all the knowledge at that time. So certainly, it was something that there were already allegations in the complaint pertaining to that stock purchase transaction, and certainly, the plaintiff had knowledge and therefore should have alleged and prosecuted those types of arguments in connection with that complaint, but it did not. It chose not to. I'd also like to move on to an additional point. Aside from the release which bars the liquidating trustee from prosecuting this sort of claim objection against Mark Chizik, I believe there's a fundamental problem in terms of the application of law by the district court. The district court, what it did was it applied a heightened standard to Mark Chizik because of his status as an insider. Doesn't that make sense? It makes sense, but it has to be done in the framework under Section 510C, I believe, because certainly the problem is that disallowance of claims is a far more drastic remedy than equitable subordination. Under the Bankruptcy Code, there's a specific section that provides that claims can be subordinated in terms of priority. That is a lesser remedy than in this case, which dealt with the complete disallowance of a claim. So it seems odd to me that a judge could disallow a claim on a lesser standard, a lesser showing, than what would be required to simply reorder the priority of a claim. Well, it may seem odd to you as representing the client, but what's the case that says that it's improper? Mobile Steel, which is the seminal case dealing with equitable subordination. What about Pepper? How do you deal with Pepper? Well, certainly if you take the Pepper decision, we admit that there is a somewhat heightened standard for insiders. For insiders. For insiders. Absolutely, but that has to be done in the framework of equitable subordination. Where does it say that? Mobile Steel, which I cited to in my opening brief, states that disallowance of claims on equitable grounds would add nothing to the protection against unfairness already afforded the bankrupt and his creditors. A couple of lines down, it also says, it follows that disallowance of a wrongdoer's claim on non-statutory grounds would be an inappropriate form of equitable relief. Well, the first problem is that Mobile Steel is a Fifth Circuit case and Pepper is a Supreme Court case. That's correct. However, Mobile Steel does cite to additional Supreme Court authorities. If this is not a good faith transaction, then it's not, it shouldn't be, it shouldn't be subordinated. It should be, it should be denied. Claims should be denied. Do you disagree with that? Well, the problem, though, is that I do disagree with that because if the committee, for example, if the committee had not sought to disallow the claim under this theory, but if the committee had sought equitable subordination as a cause of action or complaint, there would be, there would be a higher showing necessary for equitable subordination, which is a reordering of priorities. The claim would remain. I don't know what you're saying. But I thought ultimately what the district court did, the meat of this, is the district court said that, that the burden is on Chizik to prove that this was in good faith because it looks like an insider run around the bankruptcy laws. And this, we deal with this quite a bit. And in order to do that, in order to prove that, you have a heightened standard because it's an insider. What's wrong with that? What is fundamentally wrong with that, with what the district court did there? Well, certainly, and once again, this is my comparison with the equitable subordination standard. That alone would not be enough to equitably subordinate the claim.  Just a mere showing, just a mere showing that the claim was incurred through a transaction that was not done in good faith. I think under equitable subordination, there's got to be a showing of more affirmative misconduct, something that would arise to the level of fraud or duress, something intentional in that nature. And we don't have an evidentiary record that shows that type of misconduct by Mark Chizik. Notwithstanding, notwithstanding our argument that we believe that the district court made a legal error, we believe that the district court was clearly erroneous with respect to an evaluation of the record before it. We believe that there was ample evidence before the district court to show that the transaction was clear, excuse me, fair and equitable as against the estate. There was a valuation that was obtained prior to the transaction. Certainly, that valuation showed a value that supported the purchase price. In fact, the purchase price was the lower end of that value. What was the value? The value, this is the valuation by Houlihan Loki. The value was $4 to $6 million. And what did that include? Did that include the goodwill of Coast? I believe it did. How can you possibly ascribe any value to the goodwill of Coast under these circumstances, especially $3.176 million? I mean, Coast was in nothing but hot water. Well, Your Honor, there, I believe... I think the goodwill of WorldCom or Enron, I mean, it's a negative, not a positive. And the district court said that Chizik has failed to carry his burden. There's no evidence that the goodwill of Coast was worth $3.176 million. Isn't that true? Well, certainly, we provided evidence by a financial analyst who analyzed all of the various financial statements, and based on the earnings and that type of information that was contained, our expert concluded that Coast was profitable. There were earnings. And also... And what else was going on with Coast? Well, by the end, I believe by 1999, there were a couple of investigations. We submitted a declaration by Mark Chizik and also another individual who was involved. Those declarations proved that in terms of one investigation, that investigation was not even against Coast. This is by the State of Washington. Goodwill is like blue sky. I mean, it's an intangible. And here you have Coast in terrible trouble. To claim that the goodwill is necessarily worth over $3 million seems a bit much, and that's what the district court thought. Did your analysts analyze the financial, the value in light of the pending investigations of misconduct? I don't believe that that is specifically. I don't think that's... The Houlihan-Loki opinion didn't talk about that, did it? I don't believe it speaks to it. I can't say whether it was a factor that was considered. But certainly, once again, at the time of the transaction, there were two investigations pending. One, once again, was not really against Coast. It involved another institution. There was an investigation by the State of Oregon, and that was resolved. There was no admission of wrongdoing. I believe Coast paid a fine of approximately $150,000. And certainly there may have been litigation, but that was after the time of the transaction. The district court says the Houlihan-Loki opinion contains no assessment of the basis for such a goodwill evaluation. And the Court points out Chizik has the burden as an insider to show the inherent fairness of the transaction, yet the opinion forwarded has no basis for this $3 million claim of goodwill. So the Court ignores that. Well, certainly I... That seems to make sense. Your Honor, I believe the Houlihan-Loki evaluation does set forth the basis. It talks about the fact that it... For the goodwill evaluation? Well, it analyzed the capitalized earnings of the company. Yeah. Well, it speaks for itself as the word, I think. And certainly that would impact the goodwill of the company. Yeah. Okay. I think we understand your position. It's not terribly complex. The other issue that I wanted to point out to the Court is that there was a concern after the hearing in front of the district court with respect to the warehouse line who presented evidence to the district court. All of that is contained in our records. But then the district court understood that. Yes. Zeroed that out. So I just want to clarify that because I believe there was some additional argument by a liquidating trustee saying that, you know, there was no evidence to show that the warehouse line had been repaid. I just want to reiterate that there was evidence that it was repaid. And I don't think the district court disagreed with that. Right. Now, the first alliance ledger shows that. Go ahead. And just lastly, as a factor to show that the transaction was fair and equitable, certainly there was an underlying valid business reason for the transaction. In terms of the way that the debtor did business, it had a need to securitize loans. Coast had already been a source for providing those loans at the time. The debtor had purchased approximately 50 percent of Coast's loan portfolio, and certainly this stock transaction was a continuation of that business relationship. There was no, certainly no intent by Mark Chizik to hinder or delay or impede the bankruptcy of State or other creditors. Thank you. Good morning. May it please the Court. Larry Gabriel on behalf of the trustee, Kenneth Henry. Your Honor has asked the first question of Appellant's counsel is regarding the settlement agreement. The settlement agreement at paragraph 1.53 defines the settling parties. As the parties to the stipulation, Mark Chizik was not a party to the stipulation. His signature does not appear on the settlement agreement. That's Exhibit 3, pages 8, stamped 149 to 207 in the appendix of the Record on Appeal. Accordingly, as he was not one of the signatures, he's not one of the settling parties, the objections to his proof of claim were preserved.  There is a reference to the Chizik family. It has to do with the personal claims that were brought against Brian Chizik. It does not have to do with a claim that was presented by Mark Chizik for the, in this case, against the Estate for payment under this contract right. There's a distinction as between the personal claims, that breach of fiduciary duty, et cetera, that were brought against Mark, Brian Chizik, versus the claim that was presented to which the trustee now seeks disallowance. I think the case of Marks v. Brucker, which is 434F2nd.897, Ninth Circuit decision 1970, says that where the trustee or bankruptcy estate was not a party to the settlement agreement and a settlement of an impersonal claim for or against the bankruptcy does not by force of law settle, resolve, liquidate, or discharge a claim against the estate in bankruptcy. So there's a distinguishment there. And I think that was the intent of the settlement agreement. The intent of not putting Mark Chizik as a signature was to preserve the right of the trustee to object to the claim. That's what was done. That was what the document said. And that's what the Court found in their substantial evidence on that point to support the Court's conclusion on that. With respect to the heightened standard of law that counsel talked about, the Court discussed the Pepper decision and the Mobile Steel decision. And counsel was wrong with respect to the interpretation of Mobile Steel. Mobile Steel distinguishes between when an equitable subordination claim can be presented against an insider versus an outside third party. Mobile Steel said that where, and Pepper was in accord, they relied on Pepper in doing that, that where a claim is brought against an insider, that the standard is not heightened, that it is a lower standard. It's when the equitable subordination claim is brought against a third party that there is greater scrutiny and a higher standard. In fact, the insider transaction comes under greater scrutiny, as noted by the Court, and as stated in Pepper, in the Pepper decision. In this case, there's no question that a heightened scrutiny of the claim was justified by the Court for justification of the claim. A good case on point is out of the district court, I'm sorry, the bankruptcy court, the district of, which is a Delaware case, Pereira, P-E-R-E-I-R-A v. Kogan, C-O-G-A-N. It's 294-BR-449. It's a 2003 decision. This is in your brief? No, it is not, Your Honor. And the, as I was preparing for argument and came across this case, and it's good for the discussion regarding in a case where a shareholder controls a corporation, what's the duties and obligations of the board of directors with respect to the scrutiny of those transactions? Do I need it for this case? Yeah. Well, probably not, Your Honor. I mean, what's the common sense of what the district court did here? The common sense was he looked at the claim, he found that the evidence wasn't appropriate, he found it was an insider transaction, that there wasn't justification for the valuation, and there's plenty of evidence in the record to support the Court's decision on that, and I think this Court is bound by that. Why an insider transaction? Because? Because Mark Chizik was a relative of Brian Chizik, who was the owner, and by statute and by law, he is defined as an insider. In street terms, the district court smelled a rat. In street terms, you're absolutely right, Your Honor. This transaction, yes, I would have to agree. $900,000 rat? Well, actually, it was a $4 million rat, but we just objected to the last part of it because we didn't want to chase the rat around the neighborhood and try to get the money back. We had other things that we had to deal with. Court has any further questions? Thank you. Do you wish to add anything? Just as a last point, I wanted to go back to the issue with respect to the release. I believe that the intent of the release was to release all of the family members of Brian and Sarah Chizik. If you look at the way the defined terms are set forth in the settlement stipulation, I think it's pretty clear. And, in fact, I believe it's Section 8.10, which is the release paragraph. It says in there that all claims relating to the official borrower, the committee's complaint, all of those types of claims are released. And that's the complaint that we previously discussed. So, certainly, the release goes to those issues. Thank you. Okay. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Hilo v. Equilon Enterprises. I may be mispronouncing the appellant's name.
judges: Schroeder, Pregerson, Trott